Case 3:18-cv-00247 Document 47 Filed on 07/14/20 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
July 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| WILLIE JAMES RICHARDSON, JR., § § Plaintiff. § § VS. § § BOLIVAR OFFSHORE SERVICES, § LLC and LUHR BROS., INC., § § Defendants. § | CIVIL ACTION NO. 3:18-CV-00247 |

## MEMORANDUM AND RECOMMENDATION

Pending before me in this personal injury case is Defendant Bolivar Offshore Services, LLC's Motion for Partial Summary Judgment (the "Motion"). *See* Dkt. 33. For the reasons discussed below, I recommend that the Motion for Partial Summary Judgment be **DENIED** in part and **GRANTED** in part.

## BACKGROUND

Bolivar Offshore Services, LLC ("BOS") hired Plaintiff Willie James Richardson, Jr. ("Richardson") to work as a deckhand aboard one of its tugboats, the BLUE MARLIN. From roughly May 1, 2018 through May 31, 2018, the BLUE MARLIN was on standby in St. Pete Bay, Florida. During this time period, BOS rented the BLUE MARLIN to Luhr Bros., Inc. ("Luhr"). However, Richardson's paycheck for that work came from BOS, not Luhr. Richardson testified that he therefore considered himself a BOS employee. As part of his employment, Richardson ate and slept on the BLUE MARLIN.

1

The Captain of the BLUE MARLIN, a BOS employee named Robert Reed ("Captain Reed"), instructed Richardson to work with Luhr's employees and help them with whatever they needed. When Richardson asked Captain Reed to clarify his instructions, Captain Reed simply asked a Luhr superintendent to emphasize the directive that Richardson needed to work with Luhr's employees and assist them in their tasks.

On May 31, 2018, Richardson alleges that he assisted Luhr's employees with work aboard the LB 148, a workboat owned by Luhr. A Luhr superintendent instructed Richardson to change a light on a buoy marker. As Richardson stepped from the boat onto the buoy marker to reach the light, the buoy flipped, throwing Richardson into the water. As a result, Richardson contends he sustained serious injuries. Richardson has sued both BOS and Luhr, asserting causes of action for (i) vessel unseaworthiness; (ii) negligence under both the Jones Act and general maritime law; and (iii) maintenance and cure. He seeks damages in excess of $1 million.

In the Motion for Partial Summary Judgment, BOS seeks dismissal of Richardson's claims for (i) vessel unseaworthiness; and (ii) negligence under both the Jones Act and general maritime law.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks and citation

omitted). The movant's burden may be discharged by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. He must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (internal quotation marks and citations omitted). Summary judgment may not be prevented with conclusory allegations, unsupported claims, or "presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

"In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)). Courts shall "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

## ANALYSIS

### A. UNSEAWORTHINESS CLAIM

The First Amended Complaint advances an unseaworthiness claim against BOS and Luhr. "Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea." *Beech v. Hercules Drilling Co., LLC*, 691 F.3d 566, 570 (5th Cir. 2012) (internal quotation marks and citation omitted). Importantly, an unseaworthiness claim exists only against vessel owners or

operators. *See Fla. Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993) (holding that the doctrine of unseaworthiness does not apply to a dock owner who is not also the owner or operator of the vessel). Because Richardson's alleged injuries were sustained while he was changing a buoy light aboard the LB 148, a vessel BOS neither owned nor operated, BOS argues—and Richardson concedes—that the unseaworthiness claim fails as a matter of law. Accordingly, I recommend summary judgment be granted in favor of BOS on Richardson's unseaworthiness claim.

**B.   NEGLIGENCE CLAIM UNDER THE JONES ACT AND GENERAL MARITIME LAW**

Richardson also asserts a negligence claim against BOS under the Jones Act and general maritime law. To prevail on a negligence claim under the Jones Act, "an employer-employee relationship is essential." *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980) (quotation marks and citation omitted). BOS argues that summary judgment is appropriate on Richardson's negligence claim because "BOS was not [Richardson's] Jones Act employer at the time of the incident under the borrowed servant doctrine." Dkt. 33 at 2. It is BOS's position that Richardson was Luhr's borrowed servant at the time of the alleged injury.

The borrowed servant doctrine holds that:

> One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation.

*Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909). The purpose of the borrowed servant doctrine is to "place[] the risk of a worker's injury on his actual rather than his

nominal employer. It permits the injured worker to recover from the company that was actually directing his work." *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 178 (5th Cir. 1981). "[E]ven if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes." *Guidry*, 614 F.2d at 452. A seaman may have more than one Jones Act employer. *See Id.*

In determining whether an employee is actually a borrowed servant of another employer, the Fifth Circuit has identified nine factors that district courts should consider, commonly referred to as the *Ruiz* factors:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2) Whose work is being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce to the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished the tools and the place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?

*See Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir. 1969). "[N]o one of these factors, or any combination of them, is decisive." *Id.* at 312.

Whether or not a maritime worker is a borrowed employee is a question of law, but the analysis is factually bound, involving the "nine separate factual inquiries underlying 'borrowed employee' status." *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988). A district court reviewing a motion for summary judgment premised on the

5

borrowed servant doctrine "must weigh the evidence in considering all nine factors, a task which often precludes summary judgment." *Seals v. Shell Oil Co.*, 12 F. Supp. 3d 890, 904 (E.D. La. 2014). *See also West v. Kerr-McGee Corp.*, 765 F.2d 526, 528 (5th Cir. 1985) (reversing district court's granting of summary judgment based on the borrowed servant doctrine because disputed issues of material fact existed); *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 375–76 (5th Cir. 1985) (same).

Although all nine factors must be analyzed, "[t]he central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work." *Hebron v. Union Oil Co. of California*, 634 F.2d 245, 247 (5th Cir. 1981). Accordingly, BOS asserts that Richardson boarded LB 148 to change the buoy lights under orders from Luhr, not BOS. In response, Richardson argues that he was working for BOS on the day of the accident, and that a BOS employee specifically directed him to help Luhr's crew. Richardson also points out that BOS acknowledged that the supervisor to whom Richardson reported on the day of the accident was Captain Frenell John Black, a BOS employee. This, Richardson contends, proves that BOS never relinquished control over him and his work on the date of the incident.

I understand and appreciate both parties' arguments. After a careful review of the summary judgment record, I am not convinced that BOS has conclusively established that Luhr had control over Richardson and the work he performed. Stated simply, I believe there is conflicting evidence of control that precludes summary judgment. Because I am required to resolve all ambiguities and draw all permissible inferences in favor of the non-moving party when considering a summary judgment motion, it would be inappropriate to

6

grant summary judgment in favor of BOS solely based on the control factor in *Ruiz*. In my view, the factual determination of who controlled Richardson's work should ultimately be decided by the fact finder.

Although BOS correctly points out that the control factor is the most influential factor in the borrowed servant analysis, it is important to reiterate that there are eight other *Ruiz* factors that a district court must evaluate in determining borrowed servant status. Each factor must be considered individually. *See Ruiz*, 413 F.2d at 312. BOS focuses exclusively on the control factor without even attempting to discuss the other *Ruiz* factors. In stark contrast, Richardson addresses each *Ruiz* factor individually, pointing to at least some evidence that tilts in favor of finding that Richardson was not a borrowed servant. For example, Richardson claims that a borrowed servant finding should not be made at this stage for several reasons: (i) BOS never terminated its relationship with Richardson (factor 5); (ii) BOS retained the right to discharge Richardson (factor 8); and (iii) BOS had the obligation at all times to pay Richardson (factor 9). Having reviewed the summary judgment record, I am admittedly unable to determine whether factors 2, 3, 4, 6 or 7 support or hinder a finding of a borrowed servant relationship in this case. In short, I agree with Richardson that "[a]pplying the *Ruiz* factors as a whole, there is more than enough evidence to raise a genuine dispute of material fact as to [Richardson's] status as a borrowed servant." Dkt. 35 at 9–10. Determining whether Richardson is a borrowed servant requires the Court to assess credibility and weigh evidence for each of the nine *Ruiz* factors. I think the best course is to proceed and have testimony and evidence presented at trial that will assist in evaluating these factors. To be clear, I express no opinion concerning the ultimate

7

resolution of the borrowed servant issue at trial. That issue is left for another day. My only determination is that there is a genuine issue of material fact that makes summary judgment inappropriate.

## CONCLUSION

For the reasons stated above, I recommend that BOS's Motion be **DENIED** as to the negligence claim and **GRANTED** as to the unseaworthiness claim.

SIGNED in Houston, Texas, this 14th day of July, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE